# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# SPARTANBURG DIVISION

| | |
|---|---|
| Wyneika K. Griffin, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 7:20-cv-544-TMC |
| v. ) | |
| ) | **ORDER** |
| American Credit Acceptance, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff Wyneika K. Griffin, through counsel, filed this action in state court against her former employer, Defendant American Credit Acceptance, LLC, asserting claims for pregnancy discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) ("PDA"), as well as claims for interference and retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654. (ECF No. 1-1). Defendant then removed the action to federal court and, in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), D.S.C., the case was referred to a United States Magistrate Judge for pretrial handling. Subsequently, Defendant moved for summary judgment. (ECF No. 27).

Now before the court is a Report and Recommendation ("Report") issued by the magistrate judge recommending that the court grant Defendant's motion for summary judgment. (ECF No. 30 at 20). Plaintiff, who was represented by legal counsel at the time, filed objections to the Report (ECF No. 32), and Defendant submitted a response to the objections (ECF No. 35). Plaintiff's counsel also filed a motion to be relieved as counsel at the same time that Plaintiff's objections to the Report were filed. (ECF No. 33). Plaintiff was notified of her right to oppose the motion, *id*.

at 1, but failed to respond. The court granted the motion and advised Plaintiff that she would be considered to be proceeding *pro se* until such time as substitute counsel appeared on her behalf. (ECF No. 39). To date, no attorney has entered an appearance on Plaintiff's behalf.

## I. Background and Relevant Facts

Because the Report summarizes the procedural history and factual background at length, (ECF No. 30 at 1–9), without objection from Plaintiff, the court need not recount them at length here. Briefly, in March 2007, Plaintiff began working as a servicing specialist for Defendant, collecting loan payments and handling borrowers who were unable to make payments. (ECF No. 27-2 at 3–6). Her job duties required her to be at her desk on the phone for a great part of the workday. In fact, Defendant tracked employees' time away from their workstations, or Not Ready Time ("NRT"), and limited employees to a maximum of 100 NRT minutes per day. (ECF Nos. 27-3; 27-4; 27-5). Employees are permitted to take a one-hour break for lunch, two 15-minute breaks and two 5-minute bathroom breaks. Cassandra Kennedy, Plaintiff's team leader, regularly reminded Plaintiff to ensure she was not exceeding her NRT minutes.

In January 2018, Plaintiff informed her supervisor Jamaal Hawkins that she was pregnant, and, in April 2018, Defendant granted her request for FMLA leave beginning in October 2018. (ECF No. 27-2 at 56). Plaintiff believes Defendant discriminated against her and harassed her due to her pregnancy. (ECF No. 1-1 at 4). Defendant's alleged actions "against" Plaintiff included various verbal "coachings," written warnings and, ultimately, termination. On March 7, 2018, Hawkins issued a written warning to Plaintiff about an incident in which Plaintiff "became loud, confrontational, and behaved in an inappropriate manner towards another agent during business hours" which "distracted agents on the floor and due to its loud nature, had the potential to impact calls with our customers." (ECF No. 27-3 at 16). Plaintiff was advised that such conduct would

not be tolerated and that, "[e]ffective immediately, [Plaintiff was] required to conduct [herself] in a professional and respectful manner at all times when addressing management, co-workers and employees of [Defendant]." *Id*.  In April 2018, Hawkins addressed with Plaintiff what he perceived as "loud and unprofessional conduct in front of other associates" in response to an e-mail from Hawkins encouraging Plaintiff to "reduc[e] her amount of idle time on the phone." *Id*.

In June 2018, Hawkins noticed Plaintiff had exceeded her NRT minutes on multiple occasions in order to talk to co-workers, and he discussed the issue with her.  (ECF Nos. 27-4; 27-5).  In July 2018, Hawkins again made requests to Plaintiff that she abide by the limits on NRT minutes, but Plaintiff continued to exceed the limits by returning late from breaks multiple times.  Hawkins met with Plaintiff on July 17, 2018, to issue a verbal warning and discuss her need to comply with the NRT requirements, and Plaintiff agreed she would do so in the future.  (ECF No. 27-4 at 5, 40).  Plaintiff then requested a meeting with Amy Watson in HR to discuss this verbal warning.  *Id*. at 4.  Plaintiff was advised that "if she needed additional restroom breaks, [Defendant] would not deny her this accommodation" and that "if the restroom breaks caused her to exceed the 100 [NRT] minutes that is allowed, she needed to make sure she was communicating with her supervisor about the reason for the need."  *Id*.  Plaintiff responded that she had previously submitted documents to HR showing her need for extra breaks during her pregnancy, but "ultimately admitted she had not provided [HR] with [such] documentation and stated it was part of her FMLA paperwork filed in March of 2018."  *Id*.  Upon reviewing Plaintiff's FMLA submission, Watson learned the "medical documentation specifically stated that [Plaintiff] had no restrictions."  *Id*.  Nonetheless, Watson explained to Plaintiff "that additional restroom breaks would not require a doctor's note for accommodation . . . but that she must be cautious not to take extra personal time that causes her to go over the NRT requirements."  *Id*. at 5.  Finally, Plaintiff

3

"insisted she needed to be excused from all NRT expectations going forward due to her pregnancy" but was informed that Defendant "could not give her that type of blanket accommodation." *Id*.

On July 30, 2018, Hawkins requested permission to issue Plaintiff a written warning regarding her continuing failure to abide by the NRT requirements "[b]ecause it was clear that [his] verbal conversations with [Plaintiff] were not having any impact." (ECF No. 27-4 at 5). Hawkins met with Plaintiff on August 1, 2018, and issued the written warning which noted that she had "previously been coached in the area of Not Ready times" and had "received a verbal warning on 07/17/2018" during which she was advised of "the importance of coming back from breaks on time and [keeping her NRT] under l00 minutes daily." *Id*. at 92. Because her supervisors had not noticed any "measurable improvement in this area" following informal coaching and the verbal warning, Plaintiff was issued a written warning. *Id*.

Plaintiff refused to sign an acknowledgment that she had received the written warning. *Id*. at 6. Instead, Plaintiff went immediately to HR to discuss the matter with Watson, who agreed to review it. (ECF No. 27-3 at 6). According to Defendant, when Watson later informed Plaintiff that the written warning would not be rescinded, Plaintiff "became loud, stormed out slamming the conference room door against the wall, and yelled throughout the human resources office area." *Id*. Plaintiff, however, testified that she did not lose her temper and was "never belligerent with her in any way, shape or form." (ECF No. 28-1 at 14). Subsequently, Plaintiff left work before the end of her shift. Defendant claims she did so without notifying her supervisor or team leader, as required by company policy. (ECF No. 27-4 at 6). Plaintiff disputes that account, and claims she notified both Hawkins and Kennedy she was leaving early. (ECF No. 28-1 at 15).

On August 2, 2018, Defendant terminated Plaintiff's employment. (ECF No. 27-3 at 6–7). The stated basis for Plaintiff's termination was not excessive NRT minutes but Plaintiff's "history

4

of disruptive behavior, her outbursts [on July 30, 2018], her failure to be forthright relative to a request for accommodation and leaving without notifying a member of management." *Id*. at 20–21.

In February 2019, Plaintiff submitted a formal charge against Defendant to the Equal Employment Opportunity Commission. (ECF No. 1-1 at 4). After receiving a Notice of Right to Sue in September 2019, Plaintiff filed this action against Defendant in state court, asserting claims for pregnancy discrimination in violation of Title VII, *id*. at 4; retaliation in violation of Title VII, *id*. at 5; interference with Plaintiff's right to take leave under the FMLA, *id*. at 6; and retaliation in violation of FMLA, *id*. at 7. As noted, the magistrate judge entered a Report recommending that the court grant Defendant's summary judgment motion, (ECF No. 30 at 20), Plaintiff filed objections, (ECF No. 32), and Defendant submitted a response, (ECF No. 35). Having reviewed the record and the briefs of the parties, the court concludes that a hearing is unnecessary to issue a ruling on the motion.

## II. Standard of Review

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter. *Wimmer v. Cook*, 774 F.2d 68, 72 (4th Cir. 1985) (quoting *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). The court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017).

5

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Id.* at 662 n.6 (quoting *United States v. One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, & Contents, Known As: 2121 E. 30th St., Tulsa, Okla.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). On the other hand, objections which merely restate arguments already presented to and ruled on by the magistrate judge or the court do not constitute specific objections. *See, e.g.*, *Howard v. Saul*, 408 F. Supp. 3d 721, 726 (D.S.C. 2019) (noting "[c]ourts will not find specific objections where parties 'merely restate word for word or rehash the same arguments presented in their [earlier] filings'"); *Ashworth v. Cartledge*, Civ. A. No. 6:11-cv-01472-JMC, 2012 WL 931084, at *1 (D.S.C. March 19, 2012) (noting that objections which were "merely almost verbatim restatements of arguments made in his response in opposition to Respondent's Motion for Summary Judgment . . . d[id] not alert the court to matters which were erroneously considered by the Magistrate Judge"). Furthermore, in the absence of specific objections to the Report, the court is not required to give any explanation for adopting the magistrate judge's recommendation. *Greenspan v. Brothers Prop. Corp.*, 103 F. Supp. 3d 734, 737 (D.S.C. 2015) (citing *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983)).[1]

### III.  Discussion

**A.  Title VII Retaliation Claim**

As correctly set forth in the Report, "[t]o succeed on a [Title VII] retaliation claim, a plaintiff must prove that (1) she engaged in a protected activity, (2) the employer acted adversely against her, and (3) there was a causal connection between the protected activity and the asserted

---

[1] Although at this point Plaintiff is proceeding *pro se*, and the court typically construes *pro se* filings liberally in order to allow for the development of a potentially meritorious case, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Martin v. Duffy*, 858 F.3d 239, 245 (4th Cir. 2017), Plaintiff's objections to the Report were filed by her legal counsel at the time.

6

adverse action." *Hoyle v. Freightliner*, LLC, 650 F.3d 321, 337 (4th Cir. 2011). The magistrate judge concluded that Plaintiff "had not forecasted evidence that she engaged in any conduct protected under Title VII" for purposes of establishing a Title VII retaliation claim. (ECF No. 30 at 13). Specifically, the magistrate judge noted that Plaintiff "did not testify that she complained about being discriminated against *for being pregnant*." *Id*. at 14 (emphasis added). In her objections, Plaintiff contends that her deposition testimony supports the conclusion that she "complained to upper management and Human Resources about Mr. Hawkins treating [her] more harshly because of her pregnancy." (ECF No. 32 at 9 (citing ECF No. 28-1 at 8)).

As an initial matter, this contention does not constitute a *specific* objection that would require the court to make a *de novo* determination as to the portions of the Report addressing Plaintiff's Title VII retaliation claim. *See* 28 U.S.C. § 636(b)(1). As previously noted, objections which merely restate arguments already presented to and ruled on by the magistrate judge or the court do not constitute specific objections. *See, e.g., Howard*, 408 F. Supp. 3d at 726; *Ashworth*, 2012 WL 931084, at *1. Plaintiff's objection here merely restates—largely in *verbatim* fashion— the argument presented to the magistrate judge in opposition to summary judgment. *Compare* (ECF No. 32 at 9), *with* (ECF No. 28 at 9). Therefore, a clear error standard of review would attach to this objection. *See Dunlap*, 288 F. Supp. 3d at 662. And, having reviewed the record and the materials presented by the parties, the court perceives no clear error.

Even if the court were reviewing the magistrate judge's recommendation under a *de novo* standard, however, the court would still overrule this objection. The testimony highlighted and relied upon by Plaintiff, even when viewed in light most favorable to her as the non-moving party, does not show Plaintiff complained about being treated unfairly *because* she was pregnant:

> Q.  . . . When you went to Ms. Kolakowski . . . in human resources, . . . did you fill out any like written report of what you were complaining about?
>
> A.  No, she stated she was taking down notes. And she also asked me to provide my doctor documents, my FMLA forms, and things of that nature.
>
> Q.  During the meeting with Ms. Kolakowski, . . . were you bringing up any issues about needing extra bathroom breaks or anything of that nature?
>
> A.  No, sir, not at that time. It was just basically . . . about the situation with Jamaal [Hawkins].
>
> And he also was trying to point me for days I had missed, but because I had doctor's notes for me being to the hospital because of the sickness in the early pregnancy, I was pretty much covered, so he had to remove those occurrences from my account.

(ECF No. 28-1 at 8). As reflected by this testimony, Plaintiff's complained to HR that Hawkins had improperly marked her for missing days because she had a doctor's note excuses such absences. For purposes of a retaliation claim, protected activity does not include "general complaints of unfair treatment." *Hemphill v. United Parcel Serv., Inc.*, 975 F. Supp. 2d 548, 560 (D.S.C. 2013) (concluding email complaining that employee was "'being treated unfairly,' had been 'spoken to in a very unprofessional, disrespectful, and degrading manner,' had been "verbally threatened about [her] job and [her] life,' and had been 'openly embarrassed and humiliated'" did not constitute protected activity because it "did not make any reference to discriminatory treatment based on race or sex"). The court agrees with the magistrate judge's conclusion that Plaintiff did not offer evidence that she complained about discrimination on the basis of her pregnancy and that Defendant is entitled to summary judgment as to the Title VII retaliation claim.

## B. Title VII Discrimination and FMLAs Claims for Retaliation and Interference

Plaintiff bases each of these claims on her termination and the NRT coaching and disciplinary warnings she received prior to termination. (ECF No. 1-1 at 5, 6, 7). Accordingly,

for purposes of her discussion, the magistrate judge grouped Plaintiff's claims for Title VII pregnancy discrimination, FMLA interference, and FMLA retaliation together. (ECF No. 30 at 15–20).

*Termination.* With respect to Plaintiff's claim for pregnancy discrimination under Title VII, she must show that

> (1) [s]he is a member of a protected class; (2) [s]he suffered [an] adverse employment action; (3) [s]he was performing h[er] job duties at a level that met h[er] employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.

*Randa v. Garland*, 855 Fed. App'x 874, 876 (4th Cir. 2021) (quoting *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007)). With respect to Plaintiff's contention that her *termination* constituted discrimination on the basis of pregnancy, the magistrate judge found that Plaintiff offered "no evidence regarding who replaced her" and failed to "indentif[y] any other evidence that could give rise to a reasonable inference that the termination bore any relation to her becoming pregnant." (ECF No. 30 at 16). In her objections, Plaintiff offers no specific argument as to this point.

As to Plaintiff's FMLA claims, "it [is] unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" under the FMLA. 29 U.S.C. § 2615(a)(1). To establish a cause of action for FMLA interference, Plaintiff must demonstrate that "(1) [s]he was eligible for FMLA protections; (2) [her employer] was covered by the FMLA; (3) [s]he was entitled to FMLA leave; (4) [s]he provided sufficient notice of [her] intent to take leave; and (5) [her employer] denied [her] FMLA benefits to which [s]he was entitled." *Smith v. Charter Commc'ns, Inc.*, No. 3:18-cv-80-MOC-DSC, 2020 WL 3606391, at *10 (W.D.N.C. July 2, 2020). And, finally, the elements of a *prime facie* FMLA retaliation claim are identical to a Title VII

retaliation claim: "[T]o establish a prima facie case of FMLA retaliation" a plaintiff must "prov[e] three elements: (1) [the plaintiff] engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) there was a causal link between the two events." *Fry v. Rand Constr. Corp.*, 964 F.3d 239, 244–45 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2595 (2021) (internal quotation marks omitted).

The magistrate judge concluded that Plaintiff failed to offer any "evidence that could give rise to a reasonable inference that the termination bore any relation to . . . her requesting FMLA leave." (ECF No. 30 at 16). Additionally, the magistrate judge noted that Plaintiff could not—and did not—rely on temporal proximity to fill this gap in the evidence. *Id.* at 16 n.2 ("Plaintiff does not argue that her request in April 2018 was so close in time to her termination in August 2018 that a causal relationship could be reasonably conferred from that temporal proximity alone . . . .").

Plaintiff objects to these determinations on the same basis that she objected to the magistrate judge's analysis of her Title VII retaliation claim. (ECF No. 32 at 9). Again, Plaintiff is merely restating an argument already presented to and rejected by the magistrate judge. The purpose of magistrate review is to conserve judicial resources, *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007), and objections that merely repeat an argument already considered by the magistrate judge undermine this purpose. These types of objections essentially seek to have the district court duplicate the efforts of the magistrate judge. Furthermore, even if this objection was specific and not repetitive, the court agrees with the magistrate judge that the testimony highlighted and relied upon by Plaintiff does not show she was terminated because she requested FMLA leave (which she was granted).

*NRT Coaching and Warnings*. Plaintiff contends that after she notified Defendant, she was pregnant and requested FMLA leave, Hawkins, her supervisor, repeatedly "singled [her] out" and treated her differently with regard to her NRT minutes. (ECF No. 28 at 6). Specifically, Plaintiff argues that her claims are supported by evidence that she had been given only two "verbal coaching's" before receiving a written warning for excessive NRT minutes while Cierra Johnson, a co-worker holding the same position, received eight "verbal coaching's" and two verbal warnings before receiving a written warning. *Id*. at 6–7. The magistrate judge, however, concluded "that the forecasted evidence regarding Johnson is insufficient to give rise to a reasonable inference of pregnancy discrimination or FMLA retaliation," noting that, unlike Johnson, "Plaintiff explicitly rebuffed attempts by Hawkins to coach her concerning lost time on multiple occasions." (ECF No. 30 at 18). Furthermore, the magistrate judge noted the evidence reflects that "Plaintiff never showed any inclination or ability to benefit from Hawkins's verbal coaching or to make changes in response to his verbal warning" while, by contrast, "Johnson made substantial improvements as soon as Hawkins issued her first verbal warning." *Id*. at 18–19.[2] Ultimately, the magistrate judge concluded that, "[g]iven Plaintiff's explicit resistance to Hawkins's coaching and the fact that Johnson was able to improve her conduct after . . . her first verbal warning, it is understandable that Hawkins might have given Johnson more time than he gave to Plaintiff before escalating his responses" and that "there is no nonspeculative basis for any inference that the difference in Hawkins's response was related to Plaintiff's pregnancy or FMLA-leave request." *Id*. at 19. Accordingly, the magistrate judge recommended that the court grant

---

[2] The Report notes that "when Johnson began again to have NRT problems" following a period of improvement, "Hawkins again turned to verbal coaching as his first step" and eventually had to issue verbal and written warnings. *Id*. at 19.

summary judgment as to Plaintiff's Title VII pregnancy discrimination, FMLA interference, and FMLA retaliation claims. *Id*.

As an alternative basis for recommending summary judgment on these claims, the magistrate judge concluded that the coaching and warnings regarding Plaintiff's NRT minutes did not rise "to the level of an adverse employment action." *Id*. at 20. The magistrate judge based this conclusion on record evidence that "the coaching's and warnings that Plaintiff received regarding her NRT 'did not in any way negatively impact her title, position, pay, benefits, and other terms and conditions of employment.'" *Id*. at 19–20 n.7 (quoting ECF 27-3).

In objecting to these conclusions, Plaintiff again simply cut and pasted a large part of the argument she previously presented to the magistrate judge in her memorandum in opposition to summary judgment. *Compare* (ECF No. 28 at 6), *with* (ECF No. 32 at 6–7). Nonetheless, even if the court were to consider Plaintiff's objections under a *de novo* standard, the court would reach the same conclusion as recommended by the Report. Specifically, the court agrees that the NRT coaching's and warnings did not constitute adverse employment actions. For the purposes of a Title VII discrimination claim, an "adverse employment action" is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (internal quotation marks omitted). In other words, Plaintiff must show that the action "adversely affect[ed] the terms, conditions, or benefits of the plaintiff's employment." *Holland*, 487 F.3d at 219 (internal quotation marks omitted). Here, the evidence affirmatively showed that such actions "did not in any way negatively impact her title, position, pay, benefits, and other terms and conditions of employment." (ECF No. 27-3). In fact, in Plaintiff's first meeting with Amy Watson in HR discussing NRT time and

12

bathroom breaks, Plaintiff testified she was told she did not need to worry about losing her job. (ECF No. 27-2 at 24). Accordingly, the court concludes that Plaintiff's claims fail on this ground and agrees that summary judgment is appropriate.[3]

## IV.  Conclusion

For the reasons set forth above, the court adopts the recommendations of the Report (ECF No. 30) and overrules Plaintiff's objections to the Report (ECF No. 32). The court, therefore, **GRANTS** Defendant's motion for summary judgment. (ECF No. 27). The Clerk of Court is directed to provide a copy of this order to Plaintiff at the most recent address provided to the court.

**IT IS SO ORDERED**.

s/Timothy M. Cain
United States District Judge

January 19, 2022
Anderson, South Carolina

## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.

---

[3] The magistrate judge also concluded that "Plaintiff has not forecasted evidence that the coaching's and warnings amounted to materially adverse action even under the lower standard applicable to retaliation claims." (ECF No. 30 at 20 n.7). The court agrees with this conclusion for the reasons stated in the Report.

13